Good afternoon, Your Honors. May it please the Court, my name is Donna Alzea and I represent Plaintiff Mr. Paul. Your Honors, the combination of the District Court's rulings first deeming Dr. Smitty unavailable and then excluding the critical autopsy photographs on the grounds that her deposition testimony was insufficient constituted an abuse of discretion. To be clear, this claim that is being raised in point one of our brief is a claim that depends on the combination of those two factors. It's not an individual claim that the exclusion of Dr. Smitty was improper and then separately a separate claim about the autopsy photographs. What resulted in the unfairness here is the fact that the sequence of events was that you had a situation where initially the autopsy photographs were deemed admissible by the Court. And so the Plaintiff relied on that admissibility, on that initial ruling. Subsequently, after that was determined by the District Court, Dr. Smitty was deemed unavailable. And so that happened on the 20th was the first time Were you intending, and correct me if I'm misremembering the record, but were you intending to call Dr. Whaley to talk about the autopsy photos? Yes, again, and that depends on the sequence. So the Plaintiff actually took Dr. Whaley off the witness list before the Court made this ultimate ruling that the photographs were going to be inadmissible. So again, the sequence matters because the Plaintiff relied on the presumption that the autopsy photographs would come in based on Dr. Smitty's testimony at the deposition. The Plaintiff didn't think that anything more was required. But could the Plaintiff have said, once the District Court said that the photos will be too confusing to the jury without an expert, that we need to retain an expert to explain the photos? Well, at that point, Your Honor, it was pretty late. So would we consider the exclusion of Whaley? Well, so the exclusion of Whaley, the Plaintiff said that he was not going to be calling Dr. Whaley on the 20th. And the decision was made on the 28th. So we're talking about almost at the end of trial by the time that the Court said that the photographs would not be admissible. Now, by that point, I will also note that given this record before this Court, the Plaintiff's attorney had a very good reason to believe that it would have been futile to make the request to call Dr. Whaley. The Plaintiff, in fact, had tried to call another witness, a witness named Buenoslau, I may be mispronouncing that, Perez. And on that same date, the Court said, no, you took him off your witness list, you said you weren't calling him, and even though Perez was present in the courtroom on that day to testify, and even though Perez was he – the Plaintiff argued that Perez's testimony would be well under an hour, the Court said once you take him off, he's off. But the lawyer didn't say in light of your determination on Dr. Smitty, Your Honor, we need to call Dr. Whaley. The Court, no, Your Honor, Plaintiff did not say that. Plaintiff argued that the photograph should have been admissible, and I will note that by that point, eight days later, Dr. Whaley was an out-of-state witness, he was an expert. The record isn't clear on what his availability would have been, but I think it's safe to assume that by that point, at the end of the trial, his availability was shot. You know, the determination that Smitty is unavailable, you know, doesn't really mean she can't be called as a witness. The function of it is you allow the introduction of the deposition, right? Yes, Your Honor. You're challenging the introduction of the deposition, right? No, Your Honor. The introduction of the deposition – So you're sort of saying that the determination by the District Court that she's unavailable was what, kind of a constructive prohibition on you subpoenaing Smitty? Well, that's exactly what happened, Your Honor. There is in the record a subpoena that was filled out for Smitty, but then was never issued, so – and it doesn't seem like in the record the District Court ever said you're not allowed to do that, so is that really what you're challenging? Like you couldn't call her in? Yes, Your Honor. I actually read this record as the defense did want to subpoena her to come in to testify, and the court ruled that she was not available to testify, and ruled on two bases that her deposition testimony would be admitted in lieu of her testimony. She would be excused. So my understanding, and I think a fair reading of the record is, the court was not allowing the defense – I'm sorry, the plaintiff to call her in, in spite of the fact that the plaintiff had sought a subpoena. Now, what I will note is that – The court never said that. In fact, there is a discussion about maybe she would come in, right? But then what ended up happening is she just provided a sworn statement about her not remembering the autopsy and whatnot. Well, the discussion about her coming in, that's actually out of context. So that came up early on when this issue first came up about her potentially being unavailable well before the 20th, actually, before she was excluded. So several days before that. And what happened is that she had sent an e-mail to counsel. Counsel sent that e-mail ex parte to the court, and then the court shared it with plaintiff. And once that happened, counsel ultimately – the court ultimately ruled that that letter, that ex parte letter was insufficient. And at that point, plaintiff said, well, you know, look, if this is insufficient, she needs to come in. And there was a discussion about whether she should come in to cure that. And plaintiff argued, no, you should not allow her to come in for the purpose of curing the insufficiencies in that letter. You should make a determination that she is available and she should have to come in. That was the context of that. So – but at the end, substantively, Your Honors, the fact is that what Dr. Smitty provided was not sufficient. Dr. Smitty did testify – did actually state in her declaration, in very general terms, that she was having some cognitive impairments and cognitive issues based on the fact that she couldn't remember words or they were hard to come by. She couldn't remember faces. But again, you're not only saying that you suffered a prejudice from her not coming in. Personally, you're saying the prejudice was from the non-introduction of the photograph. From the combination. Right. And were the photographs going to prove that the fourth taser prong made contact? Is that what you wanted to say? The photographs were very significant because they showed – so the photographs that were excluded were autopsy photographs showing that subcutaneously, there was what looks like a fairly significant quantity of blood, subcutaneous, underneath the skin and also in the muscle. And the reason that this was essential was if you look to the summation, in this case, to the defendant's summation, the defendant's summation specifically said, and this is at page A332 of the record, quote, there is no evidence that there even was a fourth probe. And asked the jury to use your own eyes. Because marks made by a taser look different. There's a red mark on the skin. There's bruising underneath. And so what they said is if you look at just the exterior photograph, all you see is a puncture hole. And that puncture hole is not consistent with what you'd expect. Because when you have a taser prong that goes in that has barb like a fish hook, it's going to cause more damage. The fourth prong recovered, but I thought that the officers did not dispute that the four prongs made contact. Well, that was one of the main disputed issues at trial was whether a fourth prong went in. And this was extremely relevant to the question of excessive force because it made the difference between there being 13 potential electrical discharges from 13 separate taser poles as opposed to only six or possibly two depending on when the cords were broken. So it was one of the most contested issues at trial was the question of this fourth prong. But Dr. Smitty testified, I mean her deposition testimony, correct me if I'm misremembering, was that the puncture wound circumference was less than that of a wound caused by a taser dart. And the autopsy said that the, which she wrote, said that the bleeding around the puncture was due to a needle puncture. So she in her deposition stated that she believed that it was a needle puncture caused by an IV. But that was contradicted by the hospital records that showed that there was no intervention at that place. And here's what was key, and this is why it would have been important to either let the photo in and to allow the argument to be made or based on the deposition testimony or to have her come in to testify about it. She said she did not have the taser report. So she assumed that there were only three tasers because there were three taser prongs actually in Mr. Paul's body at the time of the autopsy. So your argument is that your client needed to cross-examine her? Yes, absolutely, Your Honor. Or at least to examine her. We'll hear from your adversary. Okay. Thank you. Good afternoon, Your Honors. May it please the Court. Jennifer Lerner on behalf of Appellees. This was a full defense verdict after a month-long jury trial with over 20 witnesses. There are four evidentiary rulings that plaintiffs challenged. I'll start with the first that my adversary was just talking about, the determination that Dr. Smitty was unavailable and the autopsy photos. And we respectfully submit that there is no probative value from these photos without their expert to explain them. Dr. Smitty was deposed and asked about this. And as Your Honor pointed out, she clearly testified to her belief that this puncture wound was from a therapeutic procedure and not from a taser prong. This was a question of fact for the jury. Plaintiffs were allowed to make their arguments about that it could have been a taser prong. But showing the jury photos of subcutaneous hemorrhaging on the underside of Mr. Paul's skin because of the puncture wound would do nothing to advance that theory or any issue in the case. But wasn't it disputed whether the fourth prong had made contact? Yeah, I think it was disputed. That was a disputed issue, whether there was this fourth prong and whether it made contact. But the photos don't help answer that. There's no dispute that there was a puncture wound there. The puncture wound caused superficial subcutaneous hemorrhaging on the underside of the skin. Showing the jury those photos, which I assume you've all looked at and are very concerned about, was from an autopsy and his skin is cut open. So showing that to the jury is inherently prejudicial because, like, for obvious reasons. You're looking at a gruesome picture. But for the jury looking at this, especially with no one to testify as to what this was, wouldn't advance any issue in the case. And as Your Honor pointed out, they did have an expert who was going to try to connect that and say, yes, this puncture, this sub... So, first of all, it's sort of weird to think of it as a challenge to the determination that she's unavailable because the function of that determination is just to allow the deposition, but nobody's really challenging the introduction of the deposition.  So it was the determination that Dr. Smitty was unavailable tantamount to this report saying, if you subpoena Dr. Smitty, I will quash it. I do think that's fair. I think that's a fair reading. So we can understand that as a kind of constructive denial of wanting to subpoena Dr. Smitty.  I think that's right. And that decision was the basis for not introducing the photographs, right? Well, I think the photographs are a separate issue. Obviously, they're trying to tie them together now, saying, well, if you would let Dr. Smitty come testify in person, and if she remembered this, which her declaration stated clearly she had only a vague recollection of the case, along with memory issues. Remember, this is five years after her deposition, which itself was four years after the autopsy. So we're talking about nine years. And part of her declaration was that she hadn't kept up with the literature. But what plaintiffs were hoping to do, apparently, was to have her come in and testify and get her to testify to the contrary of what she testified in the deposition, as to the wound. But the only way to expect her to testify, even if she did remember it, was that it's not a taser prong, whereas the wound is not. Right. Or is this the internal subcutaneous hemorrhaging consistent with a taser prong or with a puncture wound? I mean, that would have been it. Because they still have the external wound, right? There's a photograph of that that was admitted that they could argue, yes, this is consistent with a taser prong. Would you agree with opposing counsel that at that point that Dr. Smitty was deemed unavailable if the plaintiff had sought to come up with another expert who could testify to the significance of the photographs that this report would not have allowed it? I mean, I don't know. I don't think you can say that. I would say it certainly was their obligation to raise that. If they had made that decision in reliance on the photograph being admitted and then Dr. Smitty testifying to connect it, I mean, there's a lot of suppositions there that they must have been making to support that, although they didn't argue that in their brief, that it was this reliance. So even though they're saying that now, but certainly if that were all true, it was their obligation to at least ask, right? I mean, they could say, yeah, he would have denied it because he denied something else, because plaintiffs had taken way more time than they had estimated for their trial and they hadn't yet gotten to the defense case until, I think, the fourth week of trial. But it was certainly their obligation to put forth whatever argument they had as to why they needed this testimony or this photograph. So, I mean, I think it was well within the Court's discretion to say that this was more prejudicial than probative, given what the argument they were trying to make from the photograph itself. I want to just talk briefly about the other issues, unless the Court has any questions about – further questions about those, too. So the other issues that they raised are the denial of the request for a mistrial after the defense taser expert already started testifying. And Judge Broderick denied that essentially because Dr. Kroll had disclosed the exact substance of his testimony in his expert report, and plaintiffs failed to make any motion to exclude it at the proper time. Instead, they waited until I think it was the second to last day of testimony of the trial. He got up, testified completely consistent with his report, and then they objected and said it was prejudicial. So I think under the Court's discretion – If they had made a motion to exclude it, do you think that that would have been meritorious? I don't. I don't, because I think – I mean, I think the testimony was clear that he was not saying that the police guidelines were not in effect. He was not disputing those guidelines. But he was explaining the science behind tasers. And part of – Right. Exactly. Right. Right. And that – yeah. That's part of the inquiry. But also, part of plaintiff's argument was that the supposed taser in 13 times, which was obviously disputed, the officer defendant's position was that the tasers had been used for the purpose of testing the defendant. So it was only marginally effective on – for two taser pulls. But plaintiffs were arguing that the – that there were 13, and that this played a role in Mr. Paul's injuries and eventual death. So the substance of Dr. Crowell's testimony was to explain, no, that's not how tasers work. That is not – it doesn't – you know, part of it was that it doesn't build up in the body so that if you keep tasering, any outcome is more likely. So he was explaining that the science just doesn't support that. So if they had made a motion at the proper time, I mean, I think it could have been – it could have been addressed more clearly. I still think his testimony was proper. But especially given that they failed to do so, it just was, frankly, inappropriate and well within the court's discretion to deny their motion, given that they waited until after the testimony was in to make any objection. As to the final issue, which is the root cause report and the – which goes to the time that Mr. Paul arrived in the hospital, and there was a factual dispute as to whether that time was 1246 or 1258 because there was – there were two ambulances. And it was a factual dispute which one he came in on. All the doctors and hospital records show him being treated at about 1 a.m., consistent with the 1258 arrival timeline. And the report said 1245. And the report – right, there was a notation of equivalent to 1245, 0045. Why wasn't that – I don't think I quite understand why there isn't – that report doesn't constitute an admission of the hospital or of the New York City Health and Hospitals Corporation. Because it was not authenticated with a foundation for who was making it. So just because – when you're talking about a corporation, right, a corporation has to speak through people. And so, I mean, I would say that in certain circumstances where a corporation has clearly adopted a position, maybe, I don't know, maybe in a public filing. The hospital says this is a report done by our quality assurance department that we employ to produce quality assurance reports. Doesn't that mean that they're authorized to do it as employees of the hospital? You know what, it could. It could. And I don't know that their hurdle would have been very large if they undertook their proper – the proper steps they needed to do to establish it. What I just said is accurate from the record. What else did they need to do? They need to establish who wrote that and whether – But why? So if it is the quality assurance department of the hospital, what does it matter which particular person within the quality assurance department wrote the report? Well, I think there's a question as to whether their authority, the time – because remember, they just want this for this one specific fact. And we're dealing with layers of hearsay here, right? So with a report after the fact, there's no one testifying about this report. So that's hearsay. You can – let's say that's – maybe it's a business record. It could be admitted for that purpose, perhaps. But then there's the additional layer. Clearly, that – it's a third – you know, they got that information from somewhere. And the purpose of the report – I mean, I think there's very little that you can see of what this report is with the redactions, but it's saying, here, write a quick or short timeline or short background on what happened. So you see the information about what happened before, which is – But that's just to say that the hospital's employees might not have paid very close attention to the background section of their report. It doesn't mean it's not a statement by the hospital within the scope of their employees' employment, right? I'm sorry, is it – You're just saying, like, they might not have taken – they might not have prepared the background section of their report with particular care. Is that your argument? I mean, I'm saying that – I'm saying that would have been explored if plaintiffs had taken the proper steps to authenticate the document and establish the foundation. And yes – But that's what I was asking. What are those steps? So if we know that the hospital employs the Quality Assurance Department to produce quality assurance reports, and that this report was generated by that department, and that's the job of the department to produce the reports, what else do they need to show? I think it would be necessary to show that that part of it was within the scope of what their assignment was. So it might have been that, like, the background section of the report was what the review is or something? It might have been. I mean, I think – I can accept that if they had taken those steps, they may well have been able to establish that. But they didn't, and it's still their burden to do it. Would the report have made a difference? No. Okay, so I'll get to that point. Yes, they're talking about this one issue, that they were still able to argue to the jury, still a live issue in the case. They argued that the ambulance got there at 1245, and that was the timeline. They pointed to the ambulance report that said that and were still able to make that argument. So having it in another document secondhand would really have not made a difference at all. Thank you. We'll hear rebuttal. Your Honor, starting with the root cause report, to say that they had the ability to still make the argument, this is the problem. The problem is that there had an admission by the hospital that resolved the core issue as to the hospital's liability in this case, which is whether the patient got there and sat for 15 minutes untreated. And this was, like the fourth taser prong, the most contested element, the only contested element, really, with respect to that issue. This issue is resolved by Pappas, this Court's decision. Why would the report have resolved the issue? I mean, you had testimony from an ER nurse about when he came in. You had the other report, the EMS report, about when he came in. So if they hadn't introduced it, it would have just said, well, the bond insurance department was kind of careless with the background section, and we think these other sources are more credible. Because the way that it stood, there were essentially two competing stories. So one was that he arrived there, as shown by the fire department's report, at 1246. The other was that he arrived there at 1258. And that made all the difference in the world, because one means that he didn't get the reasonable care, and the other means that he did. He was treated within two minutes. This was an admission by the hospital that, in fact, he got there. That's also in dispute, right? Because they had an expert who said even if he had gotten there earlier, you know, even if he had been sedated immediately, it would not have made a difference. Your Honor. So there's a dispute about that, too. Your Honor, yes. But this is also in dispute. But it's critical. How is the statement admissible against the officers? Or does it matter to you? It doesn't matter, Your Honor. It was admissible against the hospital, and it could have been limited to that admissibility by a court's charge. And that would have been the way to do that, if you needed to do that. It could have been limited in terms of where it applies or where it's relevant. But you're not arguing that it was admissible against the officers? No, Your Honor. It was not – well, it wasn't relevant to the question against the officers. It was relevant as to the question with the hospital's liability. The issue – So if it's always admissible against the hospital for negligence, and that's a State law claim, what about the State law privilege? The State law privilege would not apply to these details. So there are two cases that resolve this issue. The first is with respect to admissibility under 801D2d, as an admission by a party opponent. The critical case is Pappas v. Middle Earth Condo Association, which is this Court's decision from 1992, which makes it clear that contrary to the district court's holding and to counsel's argument here, the identity of the employee does not matter. You don't need to identify that when you have an agency and you have an admission like this one. The answer as to whether or not – as to your question, Your Honor, whether this is privilege. Francis v. United States, also cited in our brief, says that chronologies which contain no analysis of corrective actions or whether those corrective actions were necessary cannot be subject – are not subject to the self-critical analysis privilege. And so chronologies in a root cause report are not shielded because they don't reference conclusions. So those two cases resolve that issue. So that's interesting. So opposing counsel was saying, well, it was produced by the Quality Assurance Department, but maybe they want to authorize through the background section. And you're saying the background section is actually not privileged, even though the rest of it was. So you're both drawing a distinction between different parts of the report. Well, yes, Your Honor, for different purposes. So if the background section of the report is different from the analysis, then isn't it at least plausible that actually maybe you did need to make some kind of inquiry as to whether the Quality Assurance Department was authorized to put in that chronology as opposed to the self-critical analysis? Your Honor, these are all jury questions. The problem is that in this case, because the Court's rulings – It's not a matter of eligibility, right? It only is a statement of a party opponent if the statement was produced within the scope of employment of the agent. Well, it was clearly produced within the scope of employment because it detailed all the necessary facts that were backgrounds. The fact that the chronology is not subject to privilege doesn't have to do with whether it's a statement by a party opponent or an admission by a party opponent. So two separate analyses. But the point is this. With respect to arguments, the jury, yes, had to still resolve these questions. But the problem is that here, the plaintiff had to try this case with both hands tied behind his back because he wasn't allowed to put in the evidence showing that the injury to the neck that was a critical injury actually ran a lot deeper than what was seen on the surface, which their experts argued was just an IV. It clearly wasn't. But the jury didn't get to see that and to make that analysis. And then again, the jury didn't get to see this. The jury didn't get to see the fact that the hospital actually admitted his harm. If the jury looked at the pictures of the puncture wounds from the outside of the neck, why would the picture from the inside make a difference? Your Honor, if you look at the pictures, you will see, coupled with the testimony in the deposition, by the way, that the subcutaneous injury, the blood that was there, and the deposition testimony said this, which is why it should have come in anyway, even if she wasn't called as a witness, because it was married to her testimony. It said that there was a subcutaneous injury, and when you look at the picture, you will see it goes below the skin and into the muscle. And that injury is a lot more severe than what you see on the surface. And it is consistent with the bruising that you would expect, that their experts said you would expect from a taser dart but not from an IV. And it is consistent with muscle injury from a fish hook that went into the muscle, which is what you would expect from a taser and not an IV. They argued on summation that the jury should be able to make this determination. They said, quote, use your eyes. But then they didn't give the jury the picture that was necessary to allow them to use their eyes. And that's the deprivation here. Thank you, Your Honors. Thank you very much. We will take the matter under advisement. Thank you.